## No. 10,328.

### E. S. JAFFRAY & CO. VS. H. MOSS & CO. ET ALS.

1. While it is true, as a general proposition, that no alteration can be made in a judgment by an appellate court, as between appellees, yet a co-defendant, as an appellant, may have it amended or reversed, in so far as it affects his interest, and leave it *in statu quo*, in other respects.

2. A representation made by a customer in effecting a purchase of goods on terms of credit, must be wilfully false, as a fact, and not as a mere opinion, which may be innocently mistaken, to vitiate the contract.

APPEAL from the Ninth District Court, Parish of Tensas. *Young*, J.

*Wade R. Young* and *Bayne, Denègre & Bayne* for Plaintiffs and Appellees:

Defendants made a statement to the commercial agency of R. G. Dun & Co. that they owned two plantations, costing $125,000, which were mortgaged for $33,000.

Jaffray & Co. vs. Moss & Co. et als.

The proof is that the plantations did not belong to defendants, but to one of the members of the firm; that they only cost $75,350, and that they were mortgaged for $83,000, instead of $33,000.

Giving defendants credit for all property claimed by them and by the individual members of the firm, the proof is that they owed $18,059 17 beyond their assets, taken at their own valuation; that their first attaching creditors were their nearest relatives, whose claims, worthless before, were (if defendants succeed in this suit) made good by purchase after insolvency, by defendants, through and by means of the untrue statements made to R. G. Dun & Co.'s commercial agency.

Hartwig Moss did not testify, though present; the presumption is always and inevitably against a litigant who fails to furnish evidence within his reach. Crescent City Ice Co. vs. Erman, 36 Ann. 841; School Board vs. Trimble, 33 Ann. 1073.

A purchaser not intending to pay who induces the owner to sell him goods on credit by fraudulently concealing his insolvency, and his intent not to pay for the goods, is guilty of a fraud, which entitles the vendor to disaffirm the contract and recover the goods. Donaldson vs. Farwell, 93 U. S. 631.

And if the purchaser has no reasonable expectation of being able to pay for the goods, it is equivalent to an intention not to pay. Talcott vs. Henderson, 27 American Reports 501; 31 Ohio State 162; Rowley vs. Bigelow, 12 Pick. 307; Davis vs. Stewart, 8 Fed. Rep. 803; Lowell vs. Bradlee, 9 Gill & J. 220; Wright vs. Brown, 67 N. Y. 6.

A wilfully false representation of solvency vitiates the contract, and the vendor has the right to retake his goods; a sale secured by fraudulent misrepresentations of the vendee in regard to his solvency works no change of property. Yaeger Milling Co. vs. Lawler, 39 Ann. 572; Collins vs. Cooley (Supreme Court, New Jersey) 14 Atlantic Rep. 574; Johnson vs. Peck, 1 Woodburg & Minot 335; Robinson vs. Levi, 1 Southern Reporter 555; Lindauer vs. Hay, 17 Northwestern Reporter 98; Taylor vs. Miss. Mills, 1 Southwestern Reporter 283.

A person furnishing false information to a mercantile agency to be communicated to persons who may be interested in obtaining it, for their guidance in giving credit to such person, is as much liable to the person thereby defrauded as if he made the false representations directly to the party injured. Eaton, Cole & Burnham Co. vs. Avery, 83 N. Y. 31.

Attaching creditors do not occupy the position of *bona fide* purchasers and can exercise no greater rights than their purchasing debtor. Thompson vs. Rose, 16 Conn. 74, 41 Ann. Dec. 121; Jordan vs. Parker, 56 Maine 557; Gilbert vs. Hudson, 4 Greenleaf (Maine) 345; Whitman vs. Merrill, 125 Mass. 127; Atwood vs. Dearborn, 1 Allen (Mass.) 483, 79 Ann. Dec. 755; Wiggin vs. Day, 9 Gray (Mass.) 97; Buffinton vs. Gerrish, 15 Mass. 156, 8 Ann. Dec. 97; Field vs. Stearns, 42 Vt. 106; Gasquet vs. Johnston, 2 La. 514.

In Louisiana, especially, the rights of vendors are jealously guarded. Déjan vs. Hébert, 31 Ann. 730.

---

*Snyder & Tullis* and *C. J. Boatner* for Defendants and Appellants.

---

The opinion of the Court was delivered by

WATKINS, J. Plaintiffs are engaged in jobbing and making sales of dry goods and general merchandise in the City of New York, and, on the 22nd of August, 1887, made a sale of a small stock of assorted goods to the defendants on terms of credit, and same were, at once, shipped to their domicile in the State of Louisiana, for sale at retail, in the usual course of their business. Soon after the cargo reached its destination it

was attached at the instance of various creditors of defendants, and formally taken into possession by the sheriff.

The claim of plaintiffs is that the defendants obtained the goods through fraudulent misrepresentations of solvency, made to Dun's mercantile agency, which were communicated to them, in the regular course of business, and according to the custom of merchants; and that they maintained their possession thereof, by fraudulently concealing from them their insolvency.

They represent that they parted with their goods upon the faith of their representations of solvency and the possession of large assets; and of the ownership, by the different members of the firm, of large landed estates, subject to small incumbrances; and that same were delivered to, and shipped by the defendant firm, and are now in the possession of the sheriff of Tensas, under various writs of attachment against them.

They further represent that recently, previous to the institution of this suit, they were informed that the representations, on the faith of which the sale was made, were false and fraudulent misrepresentations, and that, as a matter of fact, the defendant firm, and its individual members, were insolvent long prior thereto; that said firm purchased and received said goods well knowing their insolvency, and their inability to pay for them; that they purchased and received same with the intention of not paying therefor, and to defraud petitioners thereof; that they concealed from them their insolvency and the fraudulent purposes they had in view.

They further aver that, *subsequent to the issuance of said several writs of attachment against defendants, and the seizure of their goods,* but prior to the institution of this suit, "they elected to rescind said contract of sale, and to bring this suit, and that they so elected to rescind the same as soon as they were informed of such fraudulent conduct, and intention, on the part of defendants." They aver, further, "that by reason of such fraudulent conduct and intention, and said election to rescind, they are the absolute and unqualified owners of said goods, and merchandise, and that the defendants wrongfully claim and detain the *possession* of said property."

Under suitable allegations a writ of sequestration was obtained, the goods sequestered, and the defendants, H. Moss & Co., the sheriff and the various attaching creditors were cited.

The prayer of the petition is "that the sale of the goods and merchandise by petitioners to said H. Moss & Co. be declared void, or be rescinded and avoided for fraud, and that they be recognized as the owners, and have and recover possession of same."

The defendants deny all the charges made by the plaintiffs, and aver that same were false and libelous, and were wrongfully and maliciously made for the purpose of defaming and injuring them. They aver that they made no false or fraudulent misrepresentations whereby the plaintiffs were induced to part with their goods; but, on the contrary, they aver that their patronage was solicited by them, and the goods were sold to them without either question or statement; that the purchase was made, on their part, in perfect good faith, and with the intention, and expectation of paying for them, in the due course of trade.

Several of the attaching creditors answer and aver that the goods were the property of the defendants, and liable for and subject to their writs, under which they had acquired rights and privileges thereon, by virtue of their seizures, prior to the institution of plaintiffs' suit, and superior to those of the plaintiffs; and they pray for the rejection of the plaintiffs' demands.

On these issues judgment was rendered in favor of the plaintiffs, on the ground that, at the date of the purchase, the defendants did not expect to pay for the goods, and it, therefore, pronounced the sale void *ab initio*, recognized the plaintiffs' ownership, and decreed them entitled to be placed in possession; and several of the attaching creditors have appealed.

The facts elicited on the trial are the following, viz:

There had been dealings between the plaintiffs and the defendants from 1880 to the date of sale in question; and between plaintiffs and other firms to whom the defendants succeeded, since 1866. Prior to purchasing of plaintiffs, in August, 1877, the plaintiffs required of the defendants' represensative *no statement, written or oral,* and none was furnished, and no questions were asked. William Moss, a member of the defendant firm, says, as a witness: "I had seen Mr. Green in 1886, and he knew me at once, and sold me the goods at once. * * I bought those goods about August 22, 1887. I had no idea, at that time, that our house would fail during the business season, and did not know that the failure of our house was imminent. * * There was nothing false in my statement to Sweetzer, Pembroke & Co. * * I answered all of their questions truthfully * * Our purchases in 1887 were about the same as usual."

These statements are not disavowed by the plaintiffs' witnesses, but are affirmed, inferentially.

The credit man of the plaintiffs' firm, as a witness, says: "No special inducements were offered, to obtain credit. * * * Plaintiffs supposed defendants abundantly responsible, as shown by the statement

(of R. G. Dunn & Co.) referred to, or they would not have sold them on a credit.   *   *   I was induced to extend credit by the representations which I obtained from R. G. Dunn & Co., the Bradstreet Co., and Sweetzer, Pembroke & Co.   *   *   and I supposed them abundantly responsible, by the statement referred to heretofore, or I would not have sold the firm on a credit."

The goods were sold on open account, payable on three and four months' time.

Before making the sale to defendants, the plaintiffs consulted the reports of the R. G. Dunn & Co. mercantile agency, bearing dates July 28th, 1887, and August 12th, 1887. These reports showed that the members of the defendant firm owned two plantations which cost them $125,000, and that same were subject to an incumbrance of $33,000, and that defendants owned two stocks of goods worth $15,000 to $18,000.

The defendants did not purchase any goods of Sweetzer, Pembroke & Co., until *after* their purchase of the plaintiffs was completed. There was no formal statement called for, or made to them. They were questioned by them, and made answer to them, which answers they subsequently caused to be written out as a memorandum, and preserved it.

The plaintiffs were only informed, on the 4th of October, 1887, of the defendants suspension, and the attachment of their goods, and amongst others, those mentioned in this suit.

Prior to the 10th of October, 1887, when this suit was brought, there had been filed against defendants thirty-four attachment suits, and their property seized, on debts aggregating $100,000. In great part these debts were not then due, and many of them were on open account, and for goods purchased at the same time plaintiffs sold defendants.

Reference to the certificate of mortgages shows that defendants' real estate was mortgaged to the extent of $83,000 ; but there is no direct evidence of their insolvency at the time of these transactions.

In Yerger Milling Co. vs. Lawler, 38 Ann. 572, we recently said in quite a similar case :

" The only fraud alleged in this case is that before obtaining the credit, defendant falsely and with intent to defraud, represented himself to be solvent, knowing that he was not so.

" A representation of solvency is ordinarily implied in every application to buy merchandise on terms of credit; but it requires a wilfully false statement to that effect, as a fact, and not as a mere opinion, which may be innocently mistaken, to vitiate the contract."

Under the state of facts above recited, it is plain that as between the plaintiffs and the defendants judgment was erroneously rendered in

favor of the former. But the defendants did not appeal, nor join in the appeal of their creditors. The appellants do not, however, occupy the position of third persons with regard to the judgment. They are co-defendants and included in the decree against Moss & Co. Now, while it is true, as a general proposition, that no alteration can be made in a judgment by an appellate court, as between appellees, yet a co-defendant, as an appellant, may have it amended, or reversed, in so far as it affects his rights, notwithstanding it may remain *in statu quo* in other respects.

The judgment appealed from must be reversed in so far as it affects the appellants.

It is, therefore, ordered and decreed that said judgment, in so far as same may affect the rights and interest of the appellants, be and the same is reversed and annulled; and, it is further ordered and decreed, that there be judgment in their favor and against the plaintiffs and appellees, rejecting the demands of the latter, as to them.

It is further ordered and decreed that all costs that have been incurred, in both courts, in so far as the appellants are concerned, be taxed against the plaintiffs and appellees, and that the judgment of the court *a quo* remain undisturbed in other respects.